UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES FOR THE USE AND BENEFIT OF<br>CASH FLOW RESOURCES, LLC<br>*Plaintiff*<br><br>Versus<br><br>GRILLOT CONSTRUCTION, LLC,<br>AEGIS SECURITY INSURANCE COMPANY,<br>and DARWIN NATIONAL ASSURANCE COMPANY<br>*Defendants* | CIVIL CASE NO. 15-cv-120731<br><br>JUDGE<br><br>MAGISTRATE |

## COMPLAINT

**NOW INTO COURT**, through undersigned counsel, comes Cash Flow Resources, LLC ("CFR"), a limited liability company organized and existing under the laws of the State of Louisiana, which brings this action in its own name, as the assignee of Dredge Service of New Iberia, LLC ("Dredge Service"), a limited liability company organized and existing under the laws of the State of Louisiana, and in the name of the United States of America for its use. CFR states as follows:

### PARTIES

1. The following entities are made Defendants herein:

   a. Grillot Construction, LLC ("Grillot") is a limited liability company organized and existing under the laws of the State of Louisiana; and

   b. AEGIS Security Insurance Company is a foreign insurance company authorized to do and doing business within the State of Louisiana.

1

    c.    Darwin National Assurance Company ("Darwin") is a foreign insurance company authorized to do and doing business within the State of Louisiana.

## JURISDICTION & VENUE

2.    This is an action on a payment bond executed under 40 U.S.C.S §3131 (the "Miller Act"). Accordingly, this Court has original jurisdiction pursuant to 28 U.S.C.S. §1352.

3.    This Court has supplemental jurisdiction over the additional state law claims made in this Complaint in accordance with 28 U.S.C.S. §1367.

4.    Pursuant to 40 U.S.C.S. §3133(b)(3), venue is proper within this jurisdiction, because the work performed under the contracts at issue occurred within this judicial district.

## BACKGROUND FACTS

5.    CFR is a factoring company. It enters into factoring agreements with companies wherein a company may elect to assign and sell to CFR certain invoices that are owed to the company. This is a common type of transaction in the world of finance that occurs every day.

6.    CFR entered into a factoring agreement with Dredge Service wherein Dredge Service would transfer, sell, and assign certain invoices to CFR for work performed by Dredge Service on two projects: the Surplus Project and the Calumet Project.

7.    Grillot was the prime contractor on both projects.

8.    CFR sent Grillot a notice of assignment, which explained to Grillot that:

    a.    CFR had the right to the assignment of all present and future accounts of Dredge Service;

    b.    To the extent that Grillot was or would become indebted to Dredge Service on an account, all payments were due to be sent to CFR;

   c. The assignment was not an assignment of the subcontract, but an assignment of the contract proceeds;

   d. That by approving or verifying an invoice for payment to CFR, Grillot was not waiving any claims or rights against Dredge Service under the subcontract, but was waiving any such claims against CFR; and

   e. That the arrangement would be in effect until or unless CFR notified Grillot of a change in the arrangement. *See* Exhibit 1, Notice of Assignment.

9. Russell Grillot signed the Notice of Assignment and returned it to CFR.  *See* Exhibit 1.

10. Thereafter, Dredge Service transferred, sold, and assigned invoices to CFR for work Dredge Service performed as a subcontractor to Grillot.

11. Some invoices were paid by Grillot.  Two were not.

12. At issue in this litigation are the two invoices that Dredge Service transferred, sold, and assigned to CFR for work performed by Dredge Service on the Surplus and Calumet Projects.

**The Surplus Project**

13.  On June 5, 2014, Grillot entered into a contract with the State of Louisiana Coastal Protection and Restoration Authority ("CPRA") in Vermilion Parish to perform work as the prime contractor on the Surplus Project, which is formally known as the Surplus Marsh Creation Near Freshwater Bayou, Project Number ME-25SF.

14. Darwin provided a performance and payment bond to indemnify and hold harmless CPRA from all costs and damages which may be suffered from Grillot's non-performance or nonpayment of subcontractors, laborers, materialmen, and suppliers.

15. Grillot entered into a subcontract with Dredge Service for mobilization and demobilization, grade stakes and flagging, hydraulic dredging and marsh fill, and marsh settlement plates.

16. On November 3, 2014, Dredge Service issued Invoice 1719 to Grillot for work performed on the Surplus Project from September through October 2014. *See* Exhibit 2.

17. Invoice 1719 sought payment of $133,822.26 for the dredging of 67,587 cubic feet of sediment and debris. *Id.*

18. Dredge Service presented the invoice to CFR for the purpose of transferring, assigning, and selling the invoice under the terms of the factoring agreement.

19. On November 4, 2014, CFR sent Grillot a copy of the invoice and a verification letter agreement again advising Grillot of the assignment and asking Grillot to agree that:

   a. The goods and/or services described in the invoice were acceptable;

   b. Invoice 1719 was for the same amount stated in the verification letter;

   c. Invoice 1719 would be paid without any setoff, defense, counterclaim, or recoupment;

   d. Payment of Invoice 1719 would be made directly to CFR; and

   e. The individual signing the verification letter was authorized to execute the verification letter agreement on behalf of Grillot.

20. On the same day, Jason Cox, the operations manager for Grillot, signed the verification letter agreement, agreeing that:

   a. The goods and/or services described in the invoice were acceptable;

   b. Invoice 1719 was for the same amount stated in the verification letter;

    c.  Invoice 1719 would be paid without any setoff, defense, counterclaim, or recoupment;

    d.  Payment of Invoice 1719 would be made directly to CFR; and

    e.  He was authorized to execute the verification letter agreement on behalf of Grillot. *See* Exhibit 3.

21.    On or around January 14, 2015, undersigned counsel made a demand on Grillot's counsel for the unpaid invoice.

22.    Grillot refused to pay the invoice.

23.    On March 12, 2015, CFR recorded a Statement of Claim pursuant to La. R.S. 38:2242 *et seq.,* in Vermilion Parish. *See* Exhibit 4.

24.    Notice of the Statement of Claim was served on CPRA, Grillot, and Darwin by certified mail, return receipt requested.

25.    A second formal demand was sent to counsel for Grillot by certified mail, return receipt requested.  *See* Exhibit 5.

26.    As of the date this suit was filed, Grillot has not made any payment toward the balance of the invoice it agreed to pay directly to CFR without any setoff, defense, counterclaim, or recoupment against CFR.

**The Calumet Project**

27.    In August 2014, Grillot entered into a contract with the United States Army Corps of Engineers ("USACE") to perform work as the prime contractor on the Calumet Project, identified by the USACE as Contract No. W912P8-14-C-0500.

28.    AEGIS provided payment and performance bonds to indemnify and hold harmless USACE from all costs and damages which may be suffered from Grillot's non-performance or

nonpayment of subcontractors, laborers, materialmen, and suppliers in accordance with the Miller Act and 40 U.S.C.S. §3131, *et seq. See* Exhibit 6.

29. Grillot and Dredge Service entered into a subcontract agreement wherein Dredge Service would provide mobilization, demobilization, and hydraulic dredging on the Calumet Project.

30. On November 13, 2014, Dredge Service issued Invoice 1718 to Grillot for work performed on the Calumet Project.  *See* Exhibit 7.

31. Invoice 1718 was for mobilization and demobilization of equipment to and from the job site and dredging of 12,821 cubic yards of sediment and debris.  *Id*.

32. Invoice 1718 showed a reduction in payment for liquidated damages from October 25-31, 2014.  *Id.*

33. The invoice was in the amount of $88,774.10.  *Id.*

34. CFR sent Grillot a copy of the invoice and a verification letter agreement again advising Grillot of the assignment between CFR and Dredge Service and asking Grillot to agree that:

   a. The goods and/or services described in the invoice were acceptable;

   b. Invoice 1718 was for the same amount stated in the verification letter;

   c. Invoice 1718 would be paid without any setoff, defense, counterclaim, or recoupment;

   d. Payment of Invoice 1718 would be made directly to CFR; and

   e. The individual signing the verification letter was authorized to execute the verification letter agreement on behalf of Grillot.

35. On November 13, 2014, Russell Grillot, a member and the president of Grillot, signed the verification letter agreement agreeing that:

   a. The goods and/or services described in the invoice were acceptable;

    b. Invoice 1718 was for the same amount stated in the verification letter;

    c. Invoice 1718 would be paid without any setoff, defense, counterclaim, or recoupment;

    d. Payment of Invoice 1718 would be made directly to CFR; and

    e. He was authorized to execute the verification letter agreement on behalf of Grillot. *See* Exhibit 8.

36. Upon information and belief, the Calumet Project is complete, and Grillot has been paid for all of the work performed on the Project.

37. On or around January 14, 2015, undersigned counsel made a demand on Grillot's counsel for the unpaid invoice.

38. Grillot refused to pay the invoice.

39. A second, formal demand was made on Grillot's counsel, as well as AEGIS, by certified mail, return receipt requested.

40. Notice of nonpayment was also sent to the USACE by certified mail, return receipt requested.

41. As of the date this suit was filed, Grillot has not made any payment toward the balance of the invoice it agreed to pay directly to CFR without any setoff, defense, counterclaim, or recoupment against CFR.

## CLAIMS FOR DAMAGES

**Count 1: Breach of Contract on the Surplus Project (against Grillot)**

42. CFR incorporates by reference all allegations of fact contained in the foregoing paragraphs.

43. Grillot and Dredge Service entered into a subcontract agreement on the Surplus Project wherein Grillot would pay Dredge Service for mobilization and demobilization, grade stakes and flagging, hydraulic dredging and marsh fill, and marsh settlement plates.

44. Dredge Service performed the work, and submitted Invoice 1719 to Grillot for payment.

45. Grillot has not made any payment on Invoice 1719.

46. Grillot's failure to pay the invoice constitutes a breach of the subcontract agreement.

47. Pursuant to the factoring agreement, when Dredge Service sold, transferred, and assigned an account or invoice to CFR, Dredge Service also sold, transferred, and assigned to CFR, as sole owner, all rights and remedies related to the account or invoice and the proceeds thereof.

48. Grillot is liable, therefore, to CFR for all damages sustained from its breach of the contract with Dredge Service on the Surplus Project.

**Count 2: Breach of Contract on the Calumet Project (against Grillot)**

49. CFR incorporates by reference all allegations of fact contained in the foregoing paragraphs.

50. Grillot and Dredge Service entered into a subcontract agreement on the Calumet Project wherein Grillot would pay Dredge Service for mobilization, demobilization, and hydraulic dredging services.

51. Dredge Service performed the work, and submitted Invoice 1718 to Grillot for payment.

52. Despite demand, Grillot has not made any payment on Invoice 1718.

53. Grillot's failure to pay the invoice constitutes a breach of the subcontract agreement.

54. Pursuant to the factoring agreement, when Dredge Service sold, transferred, and assigned an account or invoice to CFR, Dredge Service also sold, transferred, and assigned to CFR, as sole owner, all rights and remedies related to the account or invoice and the proceeds thereof.

55. Grillot is liable, therefore, to CFR for all damages sustained from it breach of the contract with Dredge Service on the Calumet Project.

**Count 3: Bad Faith Breach of Contract with CFR (against Grillot)**

56. CFR incorporates by reference all allegations of fact contained in the foregoing paragraphs.

57. Before purchasing Invoices 1718 and 1719, CFR sent Grillot verification letter agreements again advising Grillot of the assignment and asking Grillot to confirm:

   a. The goods and/or services described in the invoices were acceptable;

   b. That the invoices were for the same amount stated in the verification letters;

   c. That the invoices would be paid without any setoff, defense, counterclaim, or recoupment;

   d. Payment of the invoices would be made directly to CFR; and

   e. That the individual signing the verification letter agreement had the authority to bind Grillot.

58. Grillot signed both verification letter agreements, agreeing that:

   a. The goods and/or services described in the invoices were acceptable;

   b. That the invoices were for the same amount stated in the verification letters;

   c. That the invoices would be paid without any setoff, defense, counterclaim, or recoupment;

   d. Payment of the invoices would be made directly to CFR; and

   e. That the individual signing the verification letter agreement had the authority to bind Grillot.

59. Although it agreed to pay CFR for both invoices, Grillot has not made any payment to CFR toward the balance of the invoice.

60. After receiving demand from CFR's counsel, Grillot refused to pay the invoices.

61. Grillot's failure to pay the invoices violates the verification letter agreements.

62. Grillot is liable, therefore, to CFR for all damages sustained from Grillot's breach of the verification letter agreements.

**Count 4: Miller Act Claim (against Grillot and AEGIS)**

63. CFR incorporates by reference all allegations of fact contained in the foregoing paragraphs.

64. Despite the passage of more than 90 days since Dredge Service last provided labor on the Calumet Project, the amount of $88,774.10 remains unpaid to CFR, as assignee of Dredge Service.

65. CFR has notified AEGIS by certified mail, return receipt requested, of Grillot's failure to pay, but to date AEGIS has not made any payment to CFR.

66. Grillot and AEGIS have breached their obligations under the payment bond by failing and refusing to pay CFR sums justly due and owing for labor furnished in the prosecution of the Calumet Project.

67. Pursuant to 40 U.S.C.S. §3131(b)(1), CFR is entitled to judgment against the bond for the full and true sum of $88,774.10.

68. CFR is also entitled to attorney's fees.

**Count 5: Prompt Payment Claim (against Grillot)**

69. CFR incorporates by reference all allegations of fact contained in the foregoing paragraphs.

70.     Pursuant to 48 CFR 52.232-27 (FAR 52.232-27), Grillot is obligated to pay CFR, as assignee of Dredge Service, for satisfactory performance of Dredge Service's completion of the subcontract no later than 7 days from receipt of payment by Grillot from the USACE.

71.     Upon information and belief, Grillot has unjustifiably withheld payments received from the USACE from CFR, as assignee of Dredge Service, and failed to pay CFR, as assignee of Dredge Service, for Dredge Service's satisfactory completion of the subcontract work.

72.     Grillot is liable to CFR for satisfactory performance of Dredge Service's completion of the work.

**Count 6: Public Works Act Claim (against Grillot and Darwin)**

73.     CFR incorporates by reference all allegations of fact contained in the foregoing paragraphs.

74.     On March 12, 2015, CFR filed with the Clerk of Court for Vermilion Parish the Statement of Claim attached hereto as Exhibit 4.

75.     CFR served the Statement of Claim upon Grillot and Darwin by certified mail, return receipt requested.

76.     Pursuant to La. R.S. §38:2242 *et seq.*, CFR, as assignee of Dredge Service, is entitled to recover from Grillot and Darwin the full amount of invoice 1719, $133,822.26, as well as 10% of said amount as attorney's fees.

**Count 7: Open Account (against Grillot)**

77.     CFR incorporates by reference all allegations of fact contained in the foregoing paragraphs.

78.     La. R.S. 9:2781 provides that

> When any person fails to pay an open account within thirty days after the claimant sends written demand therefor correctly setting forth the amount

11

>owed, that person shall be liable to the claimant for reasonable attorney fees for the prosecution and collection of such claim when judgment on the claim is rendered in favor of the claimant. Citation and service of a petition shall be deemed written demand for the purpose of this Section.

79. CFR notified Grillot of Dredge Service's assignment of its accounts with Grillot to CFR.

80. CFR made formal demand by certified mail, return receipt requested, upon Grillot for payment of the open accounts.

81. Grillot failed to discharge its obligation on the account by paying CFR, despite demands for payment from CFR.

82. Grillot is, therefore, liable to CFR for the full amount of Invoices 1718 and 1719, as well as attorney's fees for the collection of CFR's claims.

**Count 8: Detrimental Reliance (against Grillot)**

83. CFR incorporates by reference all allegations of fact contained in the foregoing paragraphs.

84. Alternatively, La. Civ. Code art. 1967 provides that a party may be obligated by a promise when he knew that the promise would induce the other party to rely on it, and the other party was reasonable in so relying.

85. Grillot knew or should have known that its promise to pay the invoices would induce CFR to rely on it to its detriment, and CFR was reasonable in so relying.

86. Grillot is liable, because it caused CFR to rely on its representation that Grillot would pay the outstanding amounts owed on the accounts. CFR has not been paid. Grillot is, therefore, indebted to CFR under the theory of detrimental reliance should no other ground for relief exist.

**WHEREFORE**, Cash Flow Resources, LLC prays that after all legal delays and due proceedings are had, that there be judgment in its favor and against Defendants, Grillot Construction, LLC, AEGIS Security Insurance Company, and Darwin National Assurance Company as for the damages arising from the facts and claims alleged herein, with judicial interests from the date the debts were due until paid in full, and all attorney's fees and costs of these proceedings, and for all other and further relief to which Cash Flow Resources, LLC may be entitled in law and equity.

    Respectfully Submitted,
**COUHIG PARTNERS, LLC**

*/s/ Claire E. Pontier*
Jonathan P. Lemann, #26380
Claire E. Pontier, #32025

1100 Poydras Street, Suite 3250
New Orleans, Louisiana 70163
Phone (504) 588-1288
Telecopier (504) 588-9750
lemannjp@couhigpartners.com
cpontier@couhigpartners.com

*Attorney for Plaintiff, Cash Flow Resources, LLC*